Good morning, everyone. Our first case for argument this morning is Thirteen Investment Company v. Foremost Insurance Company. Mr. O'Malley. Good morning. My name is John O'Malley. I represent the Plaintiff Appellant, Thirteen Investment Company. This is an appeal from a grant of summary judgment to the defendant, Foremost Insurance Company. Thirteen Investment Company is a small family-owned business here in the Chicago area. It's a family-owned business. They put some money together to refurbish homes. Foremost Insurance Company is a fire insurance company and a subsidiary of another very large insurance company. I bring that up because Foremost Insurance Company is in the business of adjusting fire loss claims. My client, Thirteen Investment Company, does not and has not been in the business of submitting fire loss claims. That is a significant factor here because despite the insurance company coming before this court and saying that notwithstanding their insurance policy, notwithstanding the duty of good faith and fair dealing, what the insurance company said in their response brief was quite significant. They claimed, and I'll read it to you, Foremost had no duty to communicate with Thirteen regarding the insurance claim because Thirteen was represented by a public adjuster. Such is not the law. Such should not be the law. They're obviously coming before this court suggesting that because there was a public adjuster involved, that their duties under their insurance company for which they received premiums and are in the business of adjusting and handling fire loss claims, that their duties under that insurance policy should be relieved. Mr. O'Malley, your client signed a contract with Paramount, correct? Yes, my client signed. And in that contract, your client appointed Paramount as its agent and representative in dealing with the insurance company, correct? Yes, it did. And also agreed that we direct any insurance companies to include Paramount Restoration Group on all payments on said claim. That is correct. So I guess my question here, ultimately under the UCC, is how do you deal with Article 3, Section 414C, which looks like it applies, and why didn't you sue the banks instead? Well, that's a very interesting question. The reason we did not sue the banks is because we didn't know that the check existed until significantly later. So when there is an argument that Paramount Restoration was the agent and was a loss payee, certainly it was a loss payee. There are three loss payees on that check. There was Paramount, there were 13 investment companies, and there was the mortgage company. There is no argument made, nor could there be made, that Paramount was the agent of the mortgage company. So that is very significant. What does that have to do with the problem here? Well, because the case law and the Act and their affirmative defense, which they're relying upon, Section of the UCC, which they did not allege is an affirmative defense, did not mention throughout the entire history of the case. Everybody knew that you were claiming you had not been paid. They claimed you had been paid. No prejudice in the way that whether it's a defense or just a denial of your client's allegations. Let's forget about the procedural problem. Focus in on the UCC problem. Well, the court, in the cases that we have been talking about, talk about a and the cases cited by foremost talk about an agent. But here, they're not an agent of all the co-payees. Actually, we don't need to worry too much about agents. Let's look at 3-414C. If a draft is accepted by a bank, that happened here, right? Yes. The drawer is discharged. That's from the underlying obligation to pay, correct? Under certain circumstances, yes. Well, regardless, and this is my question about circumstances, regardless of when or by whom acceptance was obtained. So why doesn't that govern here? Because we're not suing on the check. We're suing on the insurance policy. So the other section of the UCC applies, which they raised, which their argument is that 13 agreed to take the check, and therefore that foremost was relieved from their underlying liability. Here, they're not relieved from their underlying liability for several reasons. First, 13 did not agree to take the check in satisfaction of the liability. It did not know it existed. Is there any disagreement about the settlement, the settlement of your client's claim with the insurance company? There was agreement on an amount to be paid, correct? There was an agreement on the amount to be paid, yes. And that was the amount of the check? That is correct. It was delivered to your agent? It was apparently delivered to our agent, but as I pointed out, without our knowledge and without our agreement. And whose problem is that? I guess that's the question. That is foremost problem, and I'll tell you why. Because they're an insurance company that owes obligations to their policyholder. But that's where the agency question does come in, because if that's your argument, then agency law forecloses it. Well, in this situation, we're dealing with undisputed testimony from my client who talked to the actual adjuster. And the adjuster says, this is how Foremost Insurance Company, in the business of handling and resolving fire claims, is going to pay this loss. We are going to pay it in installments after inspections. And my client, being told this by Foremost, who's in the business of adjusting claims, said, that works for me. That sounds good, because I want my property repaired. So another very significant factor is we have Paramount Restoration, who is wearing a public adjuster's hat. Paramount Restoration was also hired to be the reconstruction contractor. So that's very significant here, because when you have a principal discussion with a principal, and the principals talk, and the principal of Foremost Insurance Company says, we are going to pay this in installments, in draws, after inspection of the work, my client, in the undisputed testimony, is that he understood that. He relied upon that. Did Paramount do some work? Paramount did some work at the facility. And when my client, and the reason my client even discovered that these checks had been issued, again, there's no dispute that Foremost didn't pick up the phone, didn't send an email, didn't send a copy of the check. Can I just slow you down, and let's just take this a step at a time? They did some work. How much of the repair work was done? There's at least $100,000 worth of work to go, according to my client's testimony. And Paramount has disappeared? They have, yes. Yes. You can find them, can't find them, or they're judgment-proof? Absolutely judgment-proof. Okay. So, but let me, well, I'll try one more time. Under 3414C and the related provisions in the UCC, it looks to me like your remedy is against the bank that negotiated, that honored the check with the signature of Paramount and the forged signatures of your client and the mortgagee. And my answer to that is no, and there's a technical reason, which is my client never had physical possession of the check. And as a result, it is not in a position to go ahead and to chase after the banks. Now, who was in possession, in a position to go after its bank is foremost. And the suggestions that have been made that this small policyholder should have to chase down these judgment-proof individuals, raising claims. Whom he made his agent, right. He was an agent for purposes of the public adjustment. He was not an agent for purposes of the construction work. That was an arm's-length agreement and foremost was advised of that because Mr. Starczak and their adjuster had a discussion on the phone. And, again, this is undisputed. This is undisputed testimony from my client, and there was no contrary testimony proffered by foremost. And this court can and absolutely should take an inference that the absence of that type of evidence, which is clearly available because this was their adjuster, their employee, was available. But, nevertheless, we're dealing with a summary judgment on an affirmative defense where there are clearly questions of fact. But I believe... Mr. Bailey, a question about the law. We're sitting in diversity. Illinois law applies. There are two Illinois appellate court decisions. Case law is somewhat sparse. It looks like you're really rising and falling with this VFS case from the district court from the Middle District of Florida. Is that correct? I am relying on the case for sure, but I also believe that if you take a look, and I have argued in my brief at length, that those two cases don't apply because they're distinguishable. The reason being the plaintiffs, the injured parties in those cases, took the checks. So we have a medical group receive checks at their offices, gave them to their employees, the employees skedaddled with the money. The other one was a policyholder who told the insurance company send the check to a contractor. I agreed to take the check. Here, my client never agreed to take the check, which is what the statute provides. And again, I'm not suing on the check. I've never had the check. The check was pilfered and gone. But here we have a scenario where I'm suing on the underlying obligation and the insurance company has the burden of proof that that section of the UCC applies. And factually, those two cases don't apply. And therefore, I think we're back. Because that new section of the UCC doesn't apply, we're in a scenario here where the pre-existing case law provides that we can bring an action on the underlying contract. Pre-existing meaning before the UCC? No, before the adoption of the section about taking the check relief. So do you distinguish between... ...where the employees of the insured took the checks and negotiated them? They are, as an employee, they're an agent of their employer, correct? Yes. Paramount is an agent of you. Is there a difference in the law between agents who are employees and those who are independent contractors? I think the difference and the distinguishing factor in the case is that the principal and affiliated medical requested that the checks be sent to a specific address, and they were. Then they were taken. In other words, they came into the possession of the affiliated there who was the plaintiff. We never received the checks. Therefore, our causes of action against others don't exist. I saved a few minutes for rebuttal. I have Chantal. I'll come back. Thank you. Mr. Orlando. Good morning, Your Honors. May it please the Court. Tom Orlando for Appley Foremost Insurance Company, Grand Rapids, Michigan. Thirteen's agent signed the endorsement of Thirteen on the check and kept the insurance proceeds. The issue here is whether Foremost must atone for the sins of Paramount. The answer seems obvious from the question, and it's obvious in the law that Foremost does not need to atone for the sins of Paramount. What would happen, Mr. Orlando, if it were the mortgagee suing you? The result would be the same, and that's the Parkway v. State Farm case, which I think is really on all fours with our case. That's the Illinois Public Court. Also a copayee situation with three parties on the check, the insured, in that case the contractor, and the mortgagee. So it does not appear that there were any agency relationships involved, in that case the contractor forged the endorsement of the mortgagee, and it was the mortgagee that brought the suit against State Farm, and the appellate court relied on the UCC provision 414 and 309 to say that State Farm's obligation was discharged under the provision that Your Honor read into the record. The agency, there was no agency issue there. The agency issue, I think, has come into play in this case because 13 has traveled to Florida and Texas to find some case law where there were no agents involved, and then subsequent law in those states have said, well, when you do have an agent situation, then you're back into this UCC provision. Well, we do have the agency issue here between our insured and Paramount. Ultimately, you don't think it matters. I'm sorry? Ultimately, you don't think that matters. It doesn't matter, because even if there wasn't an agency relationship, the Park-Wavy State Farm case addresses that issue. It doesn't matter under Illinois law. The parties to go after are Paramount, and by the way, Paramount, the owner of Paramount sat for a deposition in this case. Whether or not Paramount is judgment-proof, that's not in the record. I don't know that. It's not in the record. But the gentleman sat for his deposition. He acknowledged he signed the checks, and of course he claimed he took the money because he had done the work, or done a lot of the work on the property. This is a dispute between 13 and its public adjuster who handled the insurance claim and the same company who's done the restoration work. Is there any remedy, in your view, against the banks for 13? I believe there is. Again, under the Park-Wavy State Farm case, the court said the remedy certainly lies against the party that forged the endorsement, but then it also lies against the banks that accept them. And the court actually, in that case, actually addressed whether or not there is a remedy against the insurance company under the UCC in this situation, and that's where the Section 309 came into play, which deals with lost, destroyed, or stolen checks. If the check is somehow lost, destroyed, or stolen, never gets to a party that's on the check, one of the co-payees, then that's a situation where under the code the payee can come back against the drawer. Not under the insurance policy. Of course, that's significant here because this is a complaint where 13 alleges my client has breached the insurance policy. The Parkway case says no. Once you're discharged under 414, you have discharged the underlying contractual obligation. That's now gone. But if you are in the lost, destroyed, stolen situation, you may have a remedy, you being the payee, a co-payee, may have a remedy against the drawer. But in that case, the check wasn't lost, destroyed, or stolen. It was in the record. As you read it, under 309, if the check gets to one of the payees, that takes you out of 309. Is that right? That's right. And in our case, the check is in the record. Obviously, it was negotiated by Paramount. Again, there's no dispute about that. Paramount negotiated the check, took all the funds, said so under oath. There's no dispute about that. The front and back of the check is in the record. It wasn't lost, destroyed, or stolen. One of the co-payees endorsed everybody's name and took the proceeds. And that's squarely within the Parkway case that under that situation, there is no remedy under 309, and there no longer is a remedy under the policy. So there's no remedy for 13 here under the UCC. And going back to agency law, I do want to comment on what was quoted from our brief about communications with the insured. Of course, foremost, as the insurance company is required to communicate with an insured, the statement in the brief is about agency law. When the insurance company speaks with the insured's agent as an operation of law, it is speaking with the insured. It's black-letter agency law. There is no dispute here, and I think Your Honor touched upon it, that there is a covered fire loss. Nobody disputes that. That the amount of that fire loss on the building was $150,000 and changed. There's no dispute about that. That's settled. 13 doesn't argue that that's the wrong amount. There's no dispute that Paramount belongs as a payee on the check. As Your Honor pointed out, that was in the contract, and 13 concedes that they belonged on the check. The issue, the argument is, is that there was some duty to communicate that the check was being sent to the agent. There's no law that imposes that requirement. Nothing under the policy imposes that requirement. To me, it's analogous to litigation where parties settle a case, and quite often, I'm a defense attorney, I do this all the time, I know the check goes to plaintiff's attorney to handle the proceeds with his client. It's no different here. A public adjuster is a licensed professional under the law of Illinois. So he's an agent by operation of this contract and here in the relationship, but a public adjuster is a licensed professional, has obligations under the statute to put funds in a trust account similar to attorneys, so foremost would have no reason to think that when it mailed the check to the public adjuster, an agent of its insured, that the public adjuster was going to take the funds. It would have no reason to believe that a professional would do that. This is how the business is done on a regular basis. There simply is no requirement for my client to have communicated anything directly with the insured that it wasn't already communicating with the public adjuster. Mr. Orlando, aware of any statutory or regulatory investigation of the adjuster or any type of punishment that's in the offer? In this case? Yes. I'm not aware of that. It's not on the record. I'm not aware that 13 has taken any action. I do believe that public adjusters are regulated by the Illinois Department of Insurance as are insurance companies. I do not know if 13 filed a complaint against them. Thank you. Excuse me, Mr. Orlando, but plaintiff is telling us that there was an oral agreement to modify these arrangements. Could you address that? Sure. The owner of 13 has testified that he had this discussion early on in the claim process where the adjuster foremost told him that when payments would be made at some point, they would be made in installments. That's disputed by that gentleman. So in that sense, we have a fact dispute about who said what in that phone call. So the issue on summary judgment then is, well, let's assume that conversation took place and that representation was made. What does it mean as a matter of law and what does it mean for foremost obligation? So we start with the contract. There is a written contract here. It's the insurance policy. The insurance policy does not say anything about making payments in installments. The insurance policy is clear that my client has an obligation to pay the loss and must pay that loss when it's determined. Under Illinois law, my client is obligated to promptly make a payment when the payments are determined. My client has no right under the policy to sit on the funds and to tell an insured, well, we're going to pay you in dribs and drabs over time. And act as your construction manager. I'm sorry? And act as your construction supervisor. And in this case, act as the construction manager which imposes a new obligation on my client that's obviously not in the insurance policy. That's not what insurance companies do. They do not act as construction managers for the restoration of property. There is no consideration. To start off, this is an oral issue. This was not put down in writing. There's no dispute about that. In order to modify the policy, the policy states it has to be in writing. That doesn't exist. And beyond that, there's no consideration here. My client already had an obligation to pay this $150,000. It was a preexisting duty to then say, well, we're now going to act as your construction manager and we'll pay it in installments, an amount of money that they already owe under the preexisting duty rule when you already have the obligation to do something to take on some additional duty but not change the amount or change anything else. That's not consideration because there was a preexisting duty to already pay this amount of money and to pay it up front, not to pay at installment. So I think the representation about what my client said is dubious. It is in the record, so it's there. I suspect that the gentleman, to give him the benefit of the doubt, may have been confusing my client with his own public adjuster in the days following the loss where the public adjuster said to him on the construction side of this when it was understood that the public adjuster was going to actually do the work, that when the money comes in from the insurance company, we'll pay ourselves in installments as we do the work. I suspect that's what happened, but the record says what it says on that. And on that point, the Paramount was terminated by 13 from the construction project, so they didn't run away. The underlying dispute is over the fact that Paramount started to do some work and they were terminated from that job. They took the money. They wanted to be paid for the job. This is a dispute between 13 and Paramount. It's a construction dispute. It's a contract dispute between them. My client should not belong in this case. I can briefly address the waiver issue if the Court has any questions on that. I think it's an interesting issue because the word payment is in Rule 8, but I think in this case, I interpret Rule 8 to mean that you only need to assert an affirmative defense that's listed there if you're actually in an affirmative defense situation. And in this case, there's an allegation of failure to pay, and we denied that allegation. The parties were joined on the complaint and the answer. There was no need to assert anything as an affirmative defense, and under those circumstances, we don't believe that it is an affirmative defense, but even if so, I think Your Honor expressed our position on this, which is that there was no prejudice. 13 was able to make all the arguments they needed to make. Everything's in the record. They had their day in court, and we would ask this Court to affirm the judgment of the District Court. Thank you. Mr. O'Malley. In counsel's comments, there was a lot of arguments about what the record provides, and I think that makes it very clear that there is at the very least a question of fact. And therefore, summary judgment on what we all agree is an affirmative defense should not have been granted. Counsel talked about the Parkway case. I mentioned it earlier. What the Parkway case is, I think it's important. It says the lost payment provision of the policy expressly applies only to the named insureds under the policy. Foremost named insured here was 13. The court held that 1310 applied because the checks were delivered pursuant to the named insured's instructions to the defendant. Here there were no instructions to the defendant. What happened here is 13 was told how the claim would be adjusted by a party in the business of adjusting claims. Had no reason to believe that this was inconsistent with any type of practice. I further note that the cases and the distinctions that we have here, we have to draw a very careful distinction. The cases that counsel and Foremost talks about talk about the individual who designated the agent to receive the actual physical check should be the one on the risk. Here, that never happened. The way this loss could have been avoided is by the simple fact that the insurance company could have picked up the phone, could have let its named insured know that the checks were issued. And if they were forged, then the insurance company has their rights to go against their banks, and that is the best way to have avoided this loss. And why is it that you cannot go after the banks? The technical provision is because we would have to have brought an action for conversion. We never had the check. We can't bring an action for conversion. Furthermore, by the time that my client learned that these checks had been issued, the time limit to go back against the bank had expired. So I see my time is up, and if you have any other questions, but thank you for taking some time this morning. Thank you. My thanks to both counsel. The case is taken under advisement.